UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  __5/14/2019__

------------------------------------------------------------X

EDDY COELLO,                               :
                                           :
                        Petitioner,        :
                                           :
          -against-                        :          18-CV-4485 (VSB) (JLC)
                                           :
EARL BELL, Superintendent,                 :
Clinton Correctional Facility,             :
                                           :
                        Respondent.        :

------------------------------------------------------------X

## <u>REPORT & RECOMMENDATION</u>

## <u>TABLE OF CONTENTS</u>

Page

I.   BACKGROUND ........................................................................................ 1

   A.   Overview of Charge ........................................................................ 1

   B.   The Trial .......................................................................................... 2

      1.   The Prosecution's Case ........................................................ 2

         a.   Coello's Relationship with Adovasio........................ 3

         b.   Events on the Evening of March 11, 2011............... 4

         c.   Subsequent Events.................................................... 5

         d.   Expert Testimony ..................................................... 7

      2.   The Defense Case .................................................................. 8

         a.   *Molineux* Evidence ................................................... 8

         b.   Challenges to Prosecution Witnesses ..................... 10

         c.   Trial Strategy ......................................................... 10

         d.   Submission of First Degree Manslaughter and Defense of Extreme Emotional Disturbance ........................................... 12

      3.   Verdict and Sentencing................................................................. 13

   C.   Post-Conviction Proceedings ....................................................... 13

      1.   Direct Appeal.................................................................... 13

      2.   Petition for Writ of Error *Coram Nobis*........................ 14

      3.   Motion to Vacate Judgment Pursuant to C.P.L. § 440.10 ............ 15

      4.   The Instant Habeas Petition.......................................... 17

i

II.   DISCUSSION ................................................................................ 18

    A.   Legal Standards for Habeas Corpus Relief Under Section 2254 .......... 18

        1.   The Exhaustion Doctrine ................................................. 18

        2.   Procedural Bar to Claims Deemed Unexhausted ........................ 19

        3.   Standard of Review Under AEDPA ...................................... 20

        4.   *Pro Se* Status .............................................................. 22

    B.   Analysis ............................................................................ 22

        1.   Timeliness of Coello's Petition ......................................... 22

        2.   Ineffective Assistance of Trial Counsel – First Claim ................. 26

            a.   Coello's Ineffective Assistance of Trial Counsel Claim is Deemed Exhausted and Not Procedurally Barred ............... 27

            b.   Coello's Ineffective Assistance of Trial Counsel Claim Lacks Merit ............................................................... 28

               i.   Whether Trial Counsel Failed to Adequately Investigate the Prosecution's Allegedly Erroneous Assertion that Coello Was a Serial Domestic Abuser ......................................................... 30

               ii.   Whether Trial Counsel Failed to Investigate and Introduce Evidence to Demonstrate Lack of Intent…35

               iii.   Whether Trial Counsel Failed to Adequately Discuss the Case with Coello ..................................... 38

               iv.   Whether Trial Counsel Failed to Present an Independent Medical Expert Witness ..................... 39

        3.   Ineffective Assistance of Appellate Counsel – Second Claim ....... 41

            a.   Coello's Ineffective Assistance of Appellate Counsel Claim is Deemed Exhausted and Not Procedurally Barred ............... 42

         b.    Coello's Ineffective Assistance of Appellate Counsel Claim
             Lacks Merit......................................................................... 43

            i.    Whether Evidence Adduced at Trial Was Insufficient
                 to Establish Requisite Intent........................................44

            ii.    Whether the Trial Court Erroneously Denied Several
                 Mistrial Applications....................................................46

            iii.   Whether Trial Counsel Was Ineffective by Allowing
                 Prejudicial Testimony...................................................48

            iv.   Whether the Prosecutor's Remarks Deprived Coello of
                 a Fair Trial....................................................................49

            v.    Whether the Trial Court Failed to Provide a
                 Meaningful Response to the Jury's First Note............50

    4.    Due Process Violation for Failure to Submit the Defense of
        Extreme Emotional Disturbance – Third Claim........................... 52

         a.    Coello's Extreme Emotional Disturbance Claim is Deemed
             Exhausted and Not Procedurally Barred............................. 53

         b.    Coello's Extreme Emotional Disturbance Claim Is Not
             Cognizable .......................................................................... 53

III.    CONCLUSION....................................................................................... 56

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Vernon S. Broderick, United States District Judge:**

*Pro se* petitioner Eddy Coello seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 following his conviction of murder in the second degree. Coello was sentenced to an indeterminate prison term of 25 years to life. For the reasons set forth below, I recommend that the petition be denied.

## I.   BACKGROUND

### A.   Overview of Charge

The following facts are drawn from the record of proceedings before the state trial court.[1] In view of Coello's conviction, the evidence presented at trial is summarized in the light most favorable to the verdict. *See, e.g.*, *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012) (citation omitted).

Coello was married to Tina Adovasio. On March 11, 2011, Coello and Adovasio had an argument by text message and telephone prior to Coello arriving home from work that evening. TR. at 158. Shortly after Coello arrived home, his 16-year-old stepson, Joseph Adovasio ("Joseph"), left the apartment. *Id.* at 56. He returned to the apartment approximately two-and-a-half hours later and asked Coello where his mother was. *Id.* at 40. Coello told Joseph that he and Adovasio

---

[1] The state court record is filed as docket entry 16. The *Molineux* hearing is filed as the main docket entry 16 ("MH."). The jury selection and other pre-trial matters are filed as exhibits one to four ("TP."). The remainder of the trial transcript is filed as exhibits five to six ("TR."). The sentencing transcript is filed as exhibit seven ("TS."). Pinpoint citations to these filings refer to the pagination that runs throughout the documents, and not to the pagination generated by this District's Electronic Case Filing system.

had fought and that Adovasio had left.  *Id.*  However, security camera footage from a neighbor's property did not show Adovasio leaving the apartment at any time during the evening of March 11, 2011.  *Id.* at 297.

On March 14, 2011, Coello reported to the police that Adovasio was missing. *Id.* at 152.  On March 16, 2011, Adovasio's body was discovered in a heavily wooded stretch of land between two roadways.  *Id.* at 228–29.  On March 16, 2011, prior to Adovasio's body being discovered, and on March 17, 2011, after her body was discovered, Coello told several individuals close to him that he had killed Adovasio. *Id.* at 419, 426, 507–08.

As a result of these events, Coello was indicted on a charge of murder in the second degree and proceeded to trial before the Honorable Ralph A. Fabrizio of the New York State Supreme Court, Bronx County and a jury.

**B.   The Trial**

**1.   The Prosecution's Case**

The prosecution offered testimony from 14 witnesses, including Joseph Adovasio, several police officers, medical experts, friends of Adovasio, and several individuals with whom Coello had spoken about what had occurred on March 11, 2011.  Coello's movements immediately outside the apartment building, and the movements of other individuals entering and exiting the apartment building, were captured by a neighbor's security camera.  The prosecution relied heavily on this footage.  The prosecution presented a theory that Coello intentionally murdered Adovasio, that he lied to her son Joseph and the police about Adovasio's

disappearance and his movements that evening, that he strategically employed the terms "snapped" and "blacked out" when discussing that evening with others, and that he only confessed to the murder once Adovasio's body had been discovered. The pertinent testimony is summarized below.

### a.    Coello's Relationship with Adovasio

Several witnesses testified regarding Coello's relationship with Adovasio. Joseph testified that on one occasion in 2007, he saw that his mother's body was bruised, and that she had a black eye and a gash on her eyebrow.  He also testified that she told him that Coello had held her down with his legs and punched her in the face.  *Id.* at 146–48.  Sara Steinberg, a friend of Adovasio, testified that Coello was very controlling about what he wanted to eat for dinner and would "flip out" if Adovasio did not prepare what Coello told her to prepare.  *Id.* at 316.  Steinberg testified that Adovasio had numerous conversations with her regarding divorcing Coello, and that in December 2010, Adovasio informed Steinberg that she was filing for divorce.  *Id.* at 317.  Margo Paladines, another friend of Adovasio, testified that she had seen bruises on Adovasio's inner thighs and calves.  *Id.* at 372–73. Paladines testified that Adovasio told her that she filed for divorce from Coello because he was aggressive and both physically and mentally abusive towards her. *Id.*  Paladines further testified that in late February or early March 2011, Adovasio informed her that she was working things out with Coello.  *Id.* at 385.

Frank Meli, a friend of Adovasio for more than 30 years, testified that she told him that Coello was very abusive towards her and that on one occasion, he

choked her so hard that she could not swallow for a day.  *Id.* at 438, 440.  According to Meli, Adovasio was "scared shit" and petrified of Coello.  Meli testified that Coello allegedly told Adovasio that he could kill her and no one would care.  *Id.* at 440, 445.

### b.    Events on the Evening of March 11, 2011

On the evening of March 11, 2011, while Coello was driving his supervisor home after work, Adovasio and Coello argued by telephone and text message, with Adovasio accusing Coello of lying about why he was coming home late.  *Id.* at 38, 111.  His supervisor Bianca Woodley testified that when she left Coello that evening, he appeared "normal" and that he "wasn't angry."  *Id.* at 569.  Joseph testified that he and Adovasio were eating dinner when Coello arrived at home, walked into the kitchen, opened the refrigerator, and asked Adovasio if she was cooking.  *Id.* at 37.  Adovasio responded "yeah, what does it look like," and Coello then closed the refrigerator door and left the apartment at approximately 8:50 p.m.  *Id.* at 37, 56, 111.  Joseph then left the apartment at 8:56 p.m.  *Id.* at 54–55.  Joseph testified that when he returned home at around 11:30 p.m., Coello told him that he and Adovasio had fought and that Adovasio had left the apartment at approximately 9:45 p.m.  *Id.* at 40.  Coello told Joseph that if Adovasio did not return, he might file a missing person report.  *Id.* at 41–42.  On March 14, 2011, Coello told the police that he left the apartment on only one occasion on the night of March 11, at 10:00 p.m., to retrieve a backpack from his car, and did not leave again until approximately 12:00 p.m. the next day.  *Id.* at 161–62.

4

The security camera footage from the evening of March 11, 2011 showed Coello leaving the apartment at 1:32 a.m. on March 12, 2011, parking his car closer to the apartment, re-entering the apartment at 1:38 a.m., and shortly after carrying out a large weighted object draped over his shoulder. *Id.* at 62–64, 89–90. He placed the object in his car, drove the car to its original parking spot and returned to the apartment at 1:40 a.m. *Id.* At 3:24 a.m., while Joseph was home and presumably asleep, Coello left the apartment, drove away in his car, and returned at 6:04 a.m. The footage does not show Adovasio leaving the apartment at any time. *Id.*

### c.   **Subsequent Events**

Joseph testified that on the morning of March 12, 2011, Coello told Joseph that "his car had not moved that evening and that Joseph was his alibi." *Id.* at 45, 48–49. Joseph was concerned that Adovasio had not yet returned home or contacted him or Coello. Joseph called Adovasio's colleagues, because Adovasio was scheduled to work that day. Her colleagues reported that Adovasio had not arrived at work. *Id.* at 45. Coello and Joseph's sister went to the police station to report Adovasio missing but were told that it was too soon to file a missing person's report. *Id.* at 48.

On the evening of March 12, 2011, Coello called his friend Amanda Schuman. Schuman testified that Coello told her that Adovasio had left the apartment following an argument and had not returned. *Id.* at 506. On March 13, 2011, Coello told Dr. Michael Cushner, the orthopedic surgeon for whom he worked, the

5

same.  *Id.* at 416–17.  On March 14, 2011, Coello reported Adovasio missing.  *Id.* at

151–52.  He provided a written statement to the police, explaining that Adovasio

was "very upset with" him on the evening of March 11, 2011.  *Id.* at 154.  He

informed Detective John Fennell that he and Adovasio had a "physical and oral

altercation [ ] before she left."  *Id.* at 160.  In his statement, he explained that

Adovasio "went to hit [him] with her right hand, grabbed it, she started to scream at

[him] that she was leaving [him] and clawed [him] with her left hand.  She received

a text and left stating something like, it's my turn to see how you like it."  *Id.* at

154–55.  He told the police that Adovasio left the apartment building at

approximately 9:40 p.m. and had not returned home since.  *Id.* at 154–55, 159–62.

Adovasio's body was discovered on the morning of March 16, 2011.  *Id.* at 226,

229.  That same day, at approximately 5:30 p.m., Coello met with Dr. Cushner.  He

told Dr. Cushner that he had killed Adovasio.  Dr. Cushner testified that Coello said

he had "blacked out" and "snapped," that "he was going to turn himself in the next

day," and that he expected "to get between five and 15 years."  *Id.* at 419–20.  That

same day, Coello asked Schuman to meet him after work.  He told Schuman: "I'm

confessing to you that I did this."  *Id.* at 507.  Schuman assumed that he was saying

Adovasio was dead, though she did not know that was the case at the time.  *Id.* at

507–08.  Schuman asked how it had happened and Coello told her that he and

Adovasio had a fight on March 11, 2011, that he left and when he returned home,

she was "still being verbally abusive to him."  He told Schuman that "the next thing

he remember[ed] he snapped and his hands were on her throat and she lost consciousness." *Id.* at 508, 513.

At around 2:00 or 2:30 a.m. on March 17, 2011, Coello telephoned Monica Rodriguez, the mother of his daughter. *Id.* at 390. Rodriguez had seen news accounts that Adovasio had been missing and that her body had been discovered. Rodriguez said "you did it" to Coello, to which Coello replied "yes, I did." *Id.* at 390–92. Rodriguez testified that Coello said that when two people are miserable together "things happen," that he had been in and out of court for years, that Adovasio had also been very unhappy, and that he had "snapped." *Id.* at 391. He informed Rodriguez that he had hired a good lawyer, that "he shouldn't be doing much time . . . maybe get about five to 20 years", and that he would "take the time to just clear his mind." *Id.* at 393.

### d.   Expert Testimony

At trial, two experts provided testimony for the prosecution. Dr. James Gill, Deputy Chief Medical Examiner for Bronx County, observed the autopsy of Adovasio and testified that Adovasio died "from strangulation from compression of the neck." *Id.* at 525. He further testified that there was evidence of "blunt force trauma." *Id.* at 527. Adovasio was subject to four separate blunt injuries to the head, had bruises around both eyes and on both arms, had scattered bruises on her leg, and a large bruise on her torso. *Id.* at 528, 530–32. Dr. Gill testified that these were "acute or fresh injuries" that "happened shortly before death." *Id.* at 532. Dr. Craig O'Connor, Forensic Biology Criminalist at the Office of Chief Medical

7

Examiner in Manhattan, testified that DNA matching Coello's was found underneath three of Adovasio's fingernails. *Id.* at 341–43, 346, 351–53. He testified that this finding was consistent with Adovasio having scratched Coello. *Id.* at 354.

### 2.   **The Defense Case**

The defense offered testimony from two witnesses: his supervisor Bianca Woodley and Dr. Alexander Milovanovic, Deputy Medical Examiner for Westchester County, who performed Adovasio's autopsy. By stipulation with the prosecution, Coello introduced evidence that if Michael M. Lease, Esq., were called as a witness, he would testify that Adovasio retained him to initiate an action for divorce against Coello, but the papers were never served and during the week of March 4, 2011, the action for divorce was withdrawn. *Id.* at 564–65. Coello did not testify.

### a.   *Molineux* **Evidence**

At trial, the prosecution sought to introduce *Molineux* evidence regarding Coello's past abusive conduct towards Adovasio and other women he had had relationships with: Luz Soltren Ortiz, Monica Rodriguez, and Glory Perez. MH. at 3–14.[2] This evidence would have demonstrated that Coello was a serial domestic abuser for more than 15 years. *See id.* at 3–11, 335. In relation to Adovasio, it would have shown that Coello had physically and psychologically abused her on a

---

[2] In *People v. Molineux*, the Court of Appeals held that a defendant's prior criminal and bad acts can be admitted as direct evidence when the evidence tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan between the commission of two or more crimes, or the identity of the person charged with the commission of the crime. 168 N.Y. 264, 293 (1901).

number of prior occasions.  For these reasons, Coello's trial counsel opposed the prosecution's *Molineux* application.  *Id.* at 13–16, 18–19.

The trial court precluded any testimony from Ortiz and Rodriguez about the abusive aspects of their relationship with Coello.  *Id.* at 336–37.  It also precluded testimony from two of Adovasio's friends, Sara Steinberg and Maryann Pagnotta, about the injuries they observed on Adovasio and what Adovasio told them regarding the origins of the bruises.  *Id.* at 239–41, 244.  The court also precluded evidence about Coello assaulting and forcing Adovasio to have sex with him in August 2007, along with evidence about him beating Adovasio at some other undetermined time.  *Id.* at 244, 264, 337.  Finally, the court precluded testimony from Perez regarding Coello's reaction when she became pregnant and any detail regarding incidents when Coello put a gun to her head, placed a knife on her, or threatened to kill her.  *Id.* at 264–66, 274–76.

However, the court permitted certain *Molineux* evidence.  It allowed Perez to testify about an incident when Coello choked her and the medical treatment she received in relation to that incident.[3]  *Id.*  Paladines was permitted to testify regarding bruises she observed on Adovasio in December 2010 and conversations with Adovasio about the state of her relationship with Coello.  *Id.* at 237–38, 244. Steinberg was permitted to testify that Coello "would flip out sometimes" over things such as Adovasio not cooking what he wanted for dinner, and in relation to conversations with Adovasio about divorcing him.  *Id.* at 240.

---

[3] However, at trial Perez was not called as a witness by either side.

Overall, the jury heard no evidence of Coello having a violent relationship with any woman besides Adovasio.

### b.   Challenges to Prosecution Witnesses

Coello's trial counsel extensively cross-examined several prosecution witnesses who provided evidence regarding the state of Coello and Adovasio's marriage.  In questioning these witnesses, counsel obtained concessions that Adovasio and Coello were working things out (TR. at 385), and entered a stipulation that Adovasio was no longer pursuing divorce.  *Id*. at 564–65.  Counsel highlighted that some of Adovasio's friends had never had an opportunity to observe the state of Coello and Adovasio's marriage or any of the allegedly abusive behavior to which Coello subjected Adovasio.  *Id.* at 318–19.  Finally, counsel brought out credibility issues relating to Meli, a witness for the prosecution.  On cross-examination, counsel elicited from Meli details of his criminal record that had not previously been disclosed and obtained an admission that Meli had posted a video on Facebook of himself threatening Coello, after initially denying this behavior while under oath. *Id.* 459–60, 481, 484–501.

### c.   Trial Strategy

In her opening, Coello's counsel acknowledged that Coello and Adovasio had a "tumultuous" and "very strange relationship."  *Id.* at 8.  Coello's counsel sought to establish that at approximately 9:40 p.m. on March 11, 2011, Adovasio berated and verbally abused him, and that this behavior caused Coello to "snap[ ]" and unintentionally kill Adovasio.  *Id.* at 604, 609, 616–17, 646.

Coello's counsel elicited testimony from Woodley, who testified that on March 11, 2011, Coello drove her home because her husband was stuck in traffic and unable to pick her up. *Id.* at 568–69. While driving Woodley home, Coello showed her text messages from Adovasio. *Id.* at 569.[4] Woodley testified that when he dropped her off, Coello "was still normal. He wasn't angry." *Id.* Coello's counsel also called Dr. Milanovic, who testified that in cases of manual strangulation, he would expect to see "abrasions, contusions and finger nail marks on the skin of the neck," which he did not find on Adovasio. *Id.* at 577–78. He also testified that he could not state with scientific certainty that Adovasio "died at the time compression was actually being applied her neck." *Id.* at 583.

In her summation, counsel argued that Coello did not intend to kill Adovasio and that the prosecution had not proven intent to kill beyond a reasonable doubt. *Id.* at 631. She contended that "[Coello and Adovasio] argued, they fought, it got really heated, and [Coello] snapped and at best he intended to cause her a serious physical injury." *Id.* at 654. She emphasized that Adovasio was "pissed off with him" and had "continuously hit him with [a] barrage of text messages, [ ] [r]anting, complaining, threatening." *Id.* at 639, 647. Adovasio "started a physical altercation with him," during which Coello "lost it" and "blacked out, and when he realized [ ] that his hands were on her throat and that she had lost consciousness [ ] he stopped." *Id.* at 647. "Unfortunately, it was too late and at some point she died."

---

[4] Detective Fennell had transcribed the text messages on the phone and testified about the language. *Id.* at 158. Adovasio told Coello that she was "[t]ired of [him] and [his] disrespectful ways. Can't stay in this relationship. . . . [F-] you . . ." *Id.*

*Id.* at 654.  Coello's trial counsel thus argued to the jury that Coello had committed manslaughter, not murder.  *Id.*

  **d.**  **Submission of First Degree Manslaughter and Defense of Extreme Emotional Disturbance**

  At the close of trial, Coello's counsel moved to dismiss the charge on the basis that the evidence did not establish that Coello intentionally killed Adovasio.  *Id.* at 599.  The court denied this application.  Coello's trial counsel then asked the court to submit to the jury the charge of manslaughter in the first degree on the basis that the evidence did not establish Coello intentionally killed Adovasio.  *Id.* at 600–01.  The prosecution agreed that a reasonable review of the evidence could justify a conviction of manslaughter in the first degree based on an intent to cause serious physical injury.  *Id.* at 615.  The court agreed and charged manslaughter in the first degree in the alternative.  *Id.* at 621–22.

  On the same basis, Coello's counsel asked the court to present the jury with the affirmative defense of extreme emotional disturbance.  *Id.* at 601.  Counsel highlighted the volatile nature of the relationship on March 11, 2011 and Adovasio's "antagonistic nature" towards Coello that day.  *Id.* at 601–03.  The prosecution objected to the extreme emotional disturbance defense being made available.  The prosecutor submitted that Coello's anger "was in culmination not of any particular event, but of a long series of fights and disagreements on various subjects" and that the evidence did not "even come close to the situations where extreme emotional disturbance has been given."  *Id.* at 616.

12

After hearing from both sides, the court denied Coello's request for the affirmative defense of extreme emotional disturbance on the basis that the evidence did not meet its definition. *Id.* at 622–23. It concluded that there was "nothing objectively speaking in [the record] that would support this jury to conclude[ ] that something specific happened of an extreme nature and not through just berating that would amount to extreme emotional disturbance, and [ ] when you look at the evidence as a whole, even viewing in the light most favorable to [Coello], [he] appear[ed] calm, cool, collected and composed throughout the next seven or eight hours." *Id.* at 622–23.

### 3. <u>Verdict and Sentencing</u>

On October 15, 2012, the jury convicted Coello of murder in the second degree. *Id.* at 717–18. On November 14, 2012, Justice Fabrizio sentenced Coello to a prison term of 25 years to life. TS. at 30.

## C. <u>Post-Conviction Proceedings</u>

### 1. <u>Direct Appeal</u>

On October 2, 2014, Coello, represented by new counsel, Susan H. Salomon, Esq., filed a brief before the Appellate Division, First Department. *See* Petitioner's Brief to the Appellate Division on Direct Appeal, Dkt. No. 14-1. Coello raised one ground on appeal: that the Court erred when it refused to submit the defense of extreme emotional disturbance, despite Coello's statements that he had "snapped" in the wake of Adovasio's "abusive" texts. *Id.* at 2–3. On June 4, 2015, the

Appellate Division unanimously affirmed Coello's conviction.  *See People v. Coello*,

129 A.D.3d 442 (1st Dep't 2015).  In doing so, the Appellate Division ruled:

> The court properly denied defendant's request for a jury
> charge on the affirmative defense of extreme emotional
> disturbance.  There was no reasonable view of the
> evidence, viewed most favorably to defendant, that he had
> established, by a preponderance of the evidence, either
> the subjective element of the defense, that he acted under
> the influence of an extreme emotional disturbance,' or the
> objective element, that there was a reasonable
> explanation or excuse for that disturbance.

*Id.* at 442–43 (citations and internal quotation marks omitted).

On June 18, 2015, Coello, represented again by Salomon, applied for leave to

appeal to the Court of Appeals.  *See* Letter Application to the Court of Appeals

Requesting Leave to Appeal, Dkt. No. 14-5.  On August 11, 2015, the Court of

Appeals denied his application.  *See People v. Coello*, 26 N.Y.3d 927 (2015).

### 2.    Petition for Writ of Error *Coram Nobis*

On February 2, 2016, Coello, proceeding *pro se*, filed a petition for Writ of

Error *Coram Nobis* with the Appellate Division, arguing that he was deprived of his

right to effective assistance of appellate counsel.  *See* Petition to the Appellate

Division for a Writ of Error *Coram Nobis* ("*Coram Nobis* Petition"), Dkt. No. 14-6, at

2–3.[5]  Coello contended that appellate counsel was ineffective because she failed to

advance a number of claims on appeal: (1) his conviction of intentional murder was

based on legally insufficient evidence, or, alternatively, was against the weight of

---

[5] Pinpoint citations to docket numbers 4 and 14 will refer to the pagination
generated by this District's ECF system, not the pagination on the document itself.

the evidence; (2) the trial court erroneously denied several mistrial applications made by the defense; (3) his trial attorneys rendered ineffective assistance of counsel by failing to object to a portion of the testimony provided by Coello's stepson; (4) certain remarks made by the prosecutor during his summation deprived Coello of a fair trial; and (5) the trial court failed to provide a meaningful response to the jury's first note. *Id.* Coello asserted that these five issues, if raised on direct appeal, would have resulted in a reversal or a reduction in sentence. *Id.* at 15. On October 13, 2016, "upon reading and filing the papers with respect to [Coello's] motion, and due deliberation having been had," the Appellate Division summarily denied Coello's *Coram Nobis* Petition. *See People v. Coello*, 2016 Slip Op. 88142(U), 2016 WL 5939079 (N.Y. App. Div. 2016), Dkt. No. 4-1, at 22–23.

Coello applied for leave to appeal to the Court of Appeals. By order dated January 24, 2017, the Court of Appeals denied Coello's application. *People v. Coello*, 28 N.Y.3d 1143 (2017); Dkt. No. 4-1, at 28.

### 3.      Motion to Vacate Judgment Pursuant to C.P.L. § 440.10

On July 26, 2016, while his *Coram Nobis* Petition was before the Appellate Division, Coello, proceeding *pro se*, moved to vacate the judgment of conviction pursuant to C.P.L. § 440.10 in the Supreme Court, Bronx County. *See* Petitioner's C.P.L. § 440.10 Motion, Dkt. No. 14-9. Coello claimed that he was deprived of his right to effective assistance of trial counsel. In particular, Coello claimed that: (1) counsel failed to adequately investigate allegations that he was a serial domestic abuser or call witnesses that could have rebutted those allegations; (2) counsel

failed to introduce evidence that supported the inference that the deceased's death was unintentional; (3) counsel failed to adequately discuss the case with Coello; and (4) counsel failed to call an independent medical expert to discredit the prosecution's expert and advance the theory that the deceased's death was the result of a reckless confrontation. *Id.* at 9, 14, 21–22.

On March 31, 2017, Justice Fabrizio denied Coello's motion. Dkt. No. 14-11 ("440 Decision"). Relying on C.P.L. § 440.30(4)(d), Justice Fabrizio found that the claims were procedurally deficient in that they were based solely on Coello's self-serving version of events and were not supported by any affidavit or other evidence. *Id.* at 3–4. Further, he concluded that Coello's specific claims of inefficient counsel were "belied by the record," finding that counsel was thoroughly prepared and her actions represented sound strategic decisions. *Id.* at 4, 12.

On May 2, 2017, Coello applied for leave to appeal to the Appellate Division. *See* Petitioner's Leave Application to the Appellate Division from denial of C.P.L. § 440.10 Motion, Dkt. No. 14-12. On July 6, 2017, the Appellate Division denied his application on the basis that there was "no question of law or fact presented which ought to be reviewed by the Appellate Division." Appellate Division's Certificate Denying Leave to Appeal, Dkt. No. 14-13.[6]

---

[6] On February 21, 2018, Coello sought leave to appeal the Appellate Division's denial to the Court of Appeals. *See* Letter Application to the Court of Appeals Requesting Leave to Appeal, Dkt. No. 4-1, at 63–64. He explained that though his application for leave was untimely, the delay resulted from the Appellate Division's failure to timely mail him a copy of its order denying leave, and thus "request[ed] permission to appeal the denial of [his] leave application." *Id.* at 64. On April 25, 2018, the Court of Appeals dismissed Coello's application for leave "because the

4.    <u>**The Instant Habeas Petition**</u>

On April 30, 2018, Coello, proceeding *pro se*, filed a petition in this Court

seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Dkt. No. 1.  Coello

raises three claims in his petition.  First, he contends that he was deprived of his

constitutional right to effective assistance of trial counsel because his counsel failed

to: (1) adequately investigate the prosecution's allegedly erroneous assertions that

he was a serial domestic abuser; (2) investigate and introduce evidence that would

have proven lack of intent, an element necessary for a charge of murder in the

second degree; (3) adequately discuss the case with him; and (4) impeach the

prosecution's expert witness by consulting with and presenting an independent

medical expert.  He contends that he was prejudiced by counsel's failures and, but

for the deficiencies, the outcome of the trial would have been different.

Memorandum of Law in Support of Petition for a Writ of *Habeas Corpus* ("Habeas

Memorandum"), Dkt. No. 4, at 4–5, 64.

Second, Coello contends that he was deprived of his constitutional right to

effective assistance of appellate counsel on direct appeal, because appellate counsel

failed to advance five meritorious issues: (1) the evidence adduced at trial was

insufficient to establish that Coello possessed the requisite intent to murder his

wife; (2) the trial court erroneously denied several mistrial applications made by the

defense; (3) his trial counsel was ineffective because she failed to object to

---

order sought to be appealed from is not appealable under CPL 450.90(1)."  Court of
Appeals Order Dismissing Leave, Dkt. No. 4-1, at 69.

prejudicial testimony of Coello's stepson, who testified that the surveillance video depicted Coello carrying his wife's body; (4) remarks made by the prosecutor during summation deprived Coello of a fair trial; and (5) the trial court failed to provide a meaningful response to the jury's first note.  Habeas Memorandum at 27, 29, 35, 55, 57.

Third, Coello contends that he was deprived of his constitutional right to due process to present a complete defense, because the trial court refused his request to submit the affirmative defense of extreme emotional disturbance to the jury. Habeas Memorandum at 58, 60, 63–64.

By order of reference dated July 10, 2018, this matter was referred to me for a report and recommendation.  Dkt. No. 10.  On October 5, 2018, respondent filed a declaration in opposition to the petition (Dkt. No. 14) and a memorandum of law in support of the opposition.  Dkt. No. 15 ("Habeas Opposition").  On January 8, 2019, Coello filed his reply papers.  Dkt. No. 20 ("Habeas Reply").

## II.      DISCUSSION

### A.      Legal Standards for Habeas Corpus Relief Under Section 2254

#### 1.      The Exhaustion Doctrine

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court.  *See* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it

appears that—(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."); § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  The exhaustion requirement is grounded in principles of comity and federalism.  *O'Sullivan*, 526 U.S. at 844 ("Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief.") (citations omitted).

### 2. Procedural Bar to Claims Deemed Unexhausted

"When a petitioner can no longer 'present his unexhausted claim of trial error to the state courts,'" a federal court sitting in habeas review "deem[s] the claim procedurally barred.'" *Richardson v. Superintendent of Mid-Orange Corr. Facility*, 621 F.3d 196, 201 (2d Cir. 2010) (quoting *Acosta v. Artuz*, 575 F.3d 177, 188 (2d Cir. 2009)); *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) ("[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to

present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson,* 501 U.S. 722, 735 (1991)).

### 3.   <u>Standard of Review Under AEDPA</u>

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Jones v. Murphy*, 694 F.3d 225, 234 (2d Cir. 2012) (quoting *Hardy v. Cross*, 565 U.S. 65, 66 (2011)).  Under the AEDPA, courts may only grant a habeas petition if the challenged state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time of the state court decision or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)–(2).

Under the first prong, the "Supreme Court has instructed that section 2254(d)(1)'s 'contrary to' and 'unreasonable application of' clauses have independent meaning." *Carmichael v. Chappius*, 848 F.3d 536, 544 (2d Cir. 2017) (citing *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000)).  "A state court decision is 'contrary to . . . clearly established Federal law, as determined by the Supreme Court' when 'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'"  *Id.* at 544 (quoting *Williams*, 529 U.S. at 412–13); *see also Parker v. Matthews*, 567 U.S.

20

37, 48–49 (2012) (circuit precedent, even if "merely reflect[ing]" Supreme Court precedent, does not constitute "clearly established federal law" for purposes of § 2254(d)(1)).

A state court makes an unreasonable application of federal law if it "correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 572 U.S. 415, 426 (2014).  Such application of federal law must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Id.* at 419 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).  "The state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (quoting *White*, 572 U.S. at 420).  The standard "is difficult to meet," and it was intended to be.  *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

Under the second prong, a state court's determination of fact "may not [be] characterize[d] . . . as unreasonable 'merely because [a reviewing court] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).  Instead, § 2254(d)(2) requires a reviewing court to "accord the state trial court substantial deference.  If '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Id.*

21

### 4.    *Pro Se* Status

A petitioner bears the burden to establish, by a preponderance of the evidence, that his constitutional rights have been violated.  *See, e.g.*, *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013).  However, the submissions of a *pro se* petitioner are held to less stringent standards than formal pleadings drafted by lawyers.  *See, e.g.*, *Davis v. Walsh*, No. 08-CV-4659 (PKC), 2015 WL 1809048, at *1, n.1 (E.D.N.Y. Apr. 21, 2015) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  Courts must liberally construe a "*pro se* petition 'to raise the strongest arguments' it suggests."  *Id.* (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006)).  *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law."  *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

### B.    Analysis

### 1.    Timeliness of Coello's Petition

As a threshold matter, Coello's petition is untimely, but entitled to the benefit of equitable tolling.[7]  The AEDPA sets a one-year time period for filing a

---

[7] Respondent argues that the petition is time-barred, but sets forth his analysis of this point solely in a footnote.  Habeas Opposition at 18, n.8.  "It is generally inappropriate to make substantive arguments in footnotes."  *In re MF Glob. Holdings Ltd. Inv. Litig.*, No. 11-CV-7866 (VM), 2014 WL 8184606, at *2 (S.D.N.Y. Mar. 11, 2014).  Indeed, arguments made only in a footnote are generally deemed to be waived.  *See, e.g., Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 45 (S.D.N.Y. 2016) (citing *City of Syracuse v. Onondaga Cty.*, 464 F.3d 297, 308 (2d Cir. 2006)).  Even though respondent resorts only to a footnote to advance this argument, the Court will nonetheless consider it.

22

federal habeas corpus petition.  28 U.S.C. § 2244(d)(1)(A).  The one-year period begins to run from the date the conviction becomes final.  *Id.*  If the petitioner seeks direct appeal in state court, the conviction becomes final 90 days after the Court of Appeals denies leave to appeal.  *Williams v. Artuz*, 237 F.3d 147, 150–51 (2d Cir. 2001).  Therefore, a conviction "bec[omes] final for [AEDPA] purposes when [a petitioner's] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s]."  *Id.* at 150 (citations omitted).[8]  However, time is tolled if the petitioner commences a state collateral proceeding such as a Writ of *Coram Nobis* and includes all appeals until further appellate review is no longer available. *Carey v. Saffold*, 536 U.S. 214, 220 (2002).

Coello's leave application to appeal his conviction to the Court of Appeals was denied on August 11, 2015.  His conviction thus became final on November 10, 2015.[9]  He commenced his *Coram Nobis* Petition 84 days later, on February 2, 2016, at which point tolling began, and his C.P.L. § 440.10 Motion on July 26, 2016.  His *Coram Nobis* Petition was denied on October 13, 2016, and his application for leave to appeal this decision was denied on January 24, 2017.  His C.P.L. § 440.10 Motion was denied on March 31, 2017 and his application for leave to appeal that decision was denied on July 6, 2017 by the Appellate Division, and that denial completed his exhaustion of his state court remedies.  July 6, 2017 is thus the final date for the

---

[8] Coello did not seek a writ of certiorari in this case.

[9] The limitations period begins to run the day after the state court's final judgment is filed.  *See Chrysler v. Guiney*, 14 F. Supp. 3d 418, 443 (S.D.N.Y. 2014), *aff'd,* 806 F.3d 104 (2d Cir. 2015); *see also* Habeas Reply at 2.

purpose of Coello's exhaustion of state collateral proceedings.  Coello filed this habeas petition 297 days later, on April 30, 2018.[10]  However, Coello's petition is untimely by 16 days, because more than one year had elapsed since Coello's conviction became final (381 days of untolled time, consisting of 84 days + 297 days).[11]

However, equitable tolling may apply to the limitation period in appropriate cases.  *Holland v. Florida*, 560 U.S. 631, 645 (2010); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).  A litigant seeking equitable tolling "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  Coello contends that he is entitled to equitable tolling because the Appellate Division did not send him notice of the July 6, 2017 order denying leave to appeal the denial of his § 440.10 motion until he contacted the

---

[10] Although the petition was not actually filed with the Court until May 18, 2018, under the "Prison Mailbox Rule," a petition is considered to be "filed" by a *pro se* prisoner on the date it is given to a prison official for mailing.  *Houston v. Lack*, 487 U.S. 266, 276 (1988).  Coello's petition does not state the date on which it was given to prison officials for mailing, but indicates it was signed on April 30, 2018.  I therefore infer that Coello gave his petition to prison officials on that day as well.  *See, e.g., Castillo v. United States,* No. 13-CV-4298 (PGG) (JLC), 2012 WL 9500631, at *1, n.3 (S.D.N.Y. Nov. 12, 2012), *adopted by*, 2016 WL 1610609 (S.D.N.Y. Apr. 20, 2016); *see also United States v. Sierra-Naranjo,* No. 78-CR-046 (JPO), 2019 WL 1785417, at *1 (S.D.N.Y. Apr. 24, 2019) ("[I]n the absence of contrary evidence, district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing.") (quoting *Hardy v. Conway*, 162 F. App'x 61, 62 (2d Cir. 2006)).

[11] Respondent miscalculated the untolled time by 20 days.  Habeas Opposition at 18, n.8.

Appellate Division's Disciplinary Committee about the status of his case on February 11, 2018.  *See* Dkt. No. 1-2, at 2–4.  Respondent argues that there is no basis to equitably toll the statutory limitations period, contending that the date Coello received notice of the Appellate Division's July 6, 2017 order is not relevant to the calculation of the tolling period, because tolling ceases on the date the court order is filed.  Habeas Opposition at 18–19, n.8.  Respondent further claims that Coello has not demonstrated that he diligently pursued his remedies such that tolling would be appropriate.  *Id.*

Prolonged delay by a state court in sending notice of a ruling that completes exhaustion of state remedies can equitably toll the limitations period even though statutory tolling ends upon entry of order and not receipt.  *See, e.g., Diaz v. Kelly*, 515 F.3d 149, 155 (2d Cir. 2008) (petitioner entitled to equitable tolling of untimely petition when state court failed to send notice of decision and petitioner acted with due diligence after receiving notice to file petition).  The Second Circuit has "held that a state court's 'prolonged delay' of seven months in notifying a petitioner about a ruling that completes exhaustion of state court remedies can constitute an extraordinary circumstance that would warrant equitable tolling."  *Favourite v. Colvin,* 758 F. App'x 68, 69 (2d Cir. 2018) (citing *Diaz*, 515 F.3d at 155).  Moreover, *pro se* litigants are not obliged to "pester a state court with frequent inquiries as to whether a pending motion has been decided, at least until a substantial period of time has elapsed."  *Diaz*, 515 F.3d at 155.

25

Here, Coello made inquiries with the Appellate Division on February 11, 2018, which was approximately nine months after he sought leave to appeal the March 31, 2017 denial of his C.P.L. § 440.10 motion and seven months after the Appellate Division's July 6, 2017 order.  Coello also submitted to the Court a copy of the legal mail log of Clinton Correctional Facility, where he is incarcerated, which appears to show no record of his having received correspondence from the First Department from July 2017 to February 2018.  Dkt. No. 1-2, at 6–13.  There is nothing in the record to directly contradict Coello's contention that the Appellate Division's February 26, 2018 response was the first notice from the court of its July 6, 2017 order.  Although the February 26, 2018 letter states that Coello "should have received [the order] in July 2017," respondent has provided no evidence of an earlier notice.  Coello made his inquiry within the AEDPA limitation period, without "pester[ing] [the] state court with frequent inquiries."  *Id*.  He filed his writ of habeas corpus two months later, making his petition untimely by only 16 days.  Thus, the Court recommends that Coello's petition be deemed timely as a result of equitable tolling.  However, for the following reasons, the Court recommends that Coello's claims be denied on their merits.

### 2.    <u>Ineffective Assistance of Trial Counsel – First Claim</u>

Coello's first claim is that he was deprived of his constitutional right to effective assistance of trial counsel, because his trial counsel, Renee Hill, Esq., failed to: (1) adequately investigate the prosecution's allegedly erroneous assertions that he was a serial domestic abuser; (2) investigate and introduce evidence that

would have proven lack of intent, an element necessary for a charge of murder in the second degree; (3) adequately discuss the case with him; and (4) impeach the prosecution's medical expert witness by consulting with and presenting an independent medical expert.[12]

As is discussed below, Coello's "ineffective assistance of trial counsel" claim is deemed exhausted, and not procedurally barred, but without merit.

### a.   Coello's Ineffective Assistance of Trial Counsel Claim is Deemed Exhausted and Not Procedurally Barred

Coello raised an ineffective assistance of trial counsel claim in his C.P.L. § 440.10 motion (Dkt. No. 14-9, at 14–26) and in his leave application to the Appellate Division.  Dkt. No. 14-12, at 3–4.  His C.P.L. § 440.10 motion was denied on procedural grounds pursuant to C.P.L. § 440.30(4)(d) and on the merits.  440 Decision at 4 ("Here, since [Coello's] claims of ineffective assistance of counsel are based solely upon his own self-serving version of what happened, [ ] his motion is denied on procedural grounds.  Moreover, [his] specific claims of ineffective counsel are belied by the record . . .").[13]  Thus, Coello's ineffective assistance of trial counsel

---

[12] Hill was lead counsel at Coello's trial; Coello has not made an ineffective assistance of counsel claim in relation to his other trial counsel, Jeffrey Chartier, Esq.

[13] There is a split in authority in the Second Circuit regarding whether the denial of a motion pursuant to C.P.L. § 440.30(4)(d) is an independent and adequate state procedural bar or a merits-based decision.  Some district courts have treated the denial of a C.P.L. § 440 motion pursuant to § 440.30(4)(d) as a procedural bar to habeas review.  *See, e.g., Marsh v. Ricks,* No. 02-CV-3449 (NRB), 2003 WL 145564, at *7 (S.D.N.Y. Jan. 17, 2003) ("[O]ur review of petitioner's claim is barred by this procedural default absent a showing of a valid excuse.").

claim is exhausted, and it is not subject to any state procedural bars (nor does respondent contend otherwise).  Therefore, the merits of the ineffective assistance of trial counsel claim should be analyzed under the AEDPA standard of review.

### b.   **Coello's Ineffective Assistance of Trial Counsel Claim Lacks Merit**

To prevail on a claim of ineffective assistance of counsel, Coello must satisfy the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984).  To do so, he must "(1) show that his counsel's representation 'fell below an objective standard of reasonableness' and (2) 'affirmatively prove prejudice.'"  *United States v. Rosa,* 666 F. App'x. 42, 44 (2d Cir. 2016) (summary order) (quoting *Strickland,* 466 U.S. at 687–88).

Under *Strickland's* first prong, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland,* 466 U.S. at 689.  In evaluating counsel's

---

Others have found a denial pursuant to § 440.30(4)(d) to be a decision on the merits. *See, e.g., Skinner v. Duncan*, No. 01-CV-6656 (DAB)(AJP), 2003 WL 21386032, at *28 (S.D.N.Y. June 17, 2003) ("[b]ecause § 440.30(4)(d) specifically states that '[u]pon considering the merits of the motion, the court may deny it without a hearing' . . . , it is a 'merits based decision, not a procedural bar'") (citations omitted); *see also Garcia v. Portuondo*, 104 F. App'x 776, 779 (2d Cir. 2004) (interpreting a different provision of the same subsection with very similar language, concluding that a court's denial of claims of ineffective assistance of trial counsel on the basis of §§ 440.10(2)(a) or 440.30(4)(b) is a "judgment on the merits"); *Bethea v. Walsh*, No. 09-CV-5037 (NGG), 2016 WL 258639, at *13 (E.D.N.Y. Jan. 19, 2016) (denial of a motion pursuant to § 440.30(4) is a merits-based decision, not a procedural bar) (cited by Habeas Opposition at 20, n.9).  The Court agrees that decisions pursuant to § 440.30(4)(d) are merit based and therefore proceeds on the basis that the court denied Coello's § 440.10 motion on the merits (which, as a matter of fact, it did in the alternative).

effectiveness, courts must assess the case from the viewpoint of the attorney at the
time of the challenged conduct or omission.  *See, e.g.*, *Lockhart v. Fretwell,* 506 U.S.
364, 371–72 (1993).  Rather than strictly scrutinizing an attorney's every decision,
courts must focus on whether counsel's behavior was so unreasonable as to
represent a "breakdown in the adversarial process that our system counts on to
produce just results." *Strickland,* 466 U.S. at 696.  "[T]he record must demonstrate
that 'counsel made errors so serious that counsel was not functioning as the
'counsel' guaranteed the defendant by the Sixth Amendment.'" *Wilson v. Mazzuca,*
570 F.3d 490, 502 (2d Cir. 2009) (quoting *Strickland,* 466 U.S. at 687).  "[I]t is not
sufficient for the habeas petitioner to show merely that counsel omitted a
nonfrivolous argument, for counsel does not have a duty to advance every
nonfrivolous argument that could be made." *Clark v. Stinson,* 214 F.3d 315, 322
(2d Cir. 2000) (quoting *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994)) (citing
*Jones v. Barnes,* 463 U.S. 745, 754 (1983)); *see also Chrysler v. Guiney,* 806 F.3d
104, 118 (2d Cir. 2015).

If a court finds that counsel was deficient, under *Strickland*'s second prong,
the petitioner then must establish that he was prejudiced as a result.  *Strickland,*
466 U.S. at 692.  To establish prejudice, he "must show that there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding
would have been different.  A reasonable probability is a probability sufficient to
undermine confidence in the outcome." *Id.* at 694.  Finally, "there is no reason for a

29

court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

In the context of AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter,* 562 U.S. 86, 101 (2011).  Given that the "standards created by *Strickland* and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." *Id.* at 105 (quotation marks omitted).

Both the trial court and the Appellate Division rejected Coello's claim that he was deprived of the right to effective assistance of trial counsel.  A review of the record establishes that the state court's denial of Coello's C.P.L. § 440.10 motion was not contrary to, or an unreasonable application of, the *Strickland* standard. Coello did not demonstrate that his trial counsel's performance fell below any objective standard of reasonableness, or that he was prejudiced as a result of any deficiency in representation.  The Court concludes that Coello's claims in relation to his trial counsel's assistance are meritless, and therefore recommends that they be denied.  The Court will consider each of Coello's bases underlying his claim in turn.

### i.    Whether Trial Counsel Failed to Adequately Investigate the Prosecution's Allegedly Erroneous Assertion that Coello Was a Serial Domestic Abuser

Coello contends that he was deprived of effective assistance of counsel because his trial counsel failed to investigate the prosecution's allegedly erroneous assertion that he was a serial domestic abuser.  Coello states that there were

several witnesses, such as Rodriguez, Ortiz, and Perez, who could have refuted allegations of prior domestic abuse and testified that he was never abusive towards them. Habeas Memorandum at 10–12. He contends that counsel failed to contact, interview, investigate, or call these witnesses. *Id.* at 9. To support this claim, Coello identifies affidavits from Ortiz and Rodriguez in which they recant earlier statements to the police regarding Coello's abusive behavior towards them. *Id.* at 7. He states that there is a reasonable probability that testimony by these witnesses, if presented to the jury, would have led to a different outcome. *Id.* at 9–11.[14]

Contrary to Coello's claims, the record demonstrates that Coello's trial counsel had substantive knowledge of the allegations of abuse and spoke at the very least to Ortiz on several occasions. TP. at 3–4. However, regardless of the extent of investigation that Coello's trial counsel undertook in relation to Coello's previous romantic partners, the jury was presented with relatively little evidence regarding Coello's allegedly abusive behavior. The trial court excluded a substantial amount of evidence relating to Coello's past abusive behavior towards romantic partners based on persuasive arguments his counsel advanced in opposition to this evidence being introduced. MH. at 3–13. In particular, the court precluded testimony from Ortiz and Rodriguez about the abusive aspects of their relationships and ruled that only a limited amount of evidence regarding Coello's prior abuse towards Perez

---

[14] Coello submitted to the Court a "Deposition of Luz Soltren-Ortiz" dated September 10, 2018 (Dkt. No. 13), but because this document was not part of the state court record, it cannot be considered by this Court as part of its habeas review. *See Cullen v. Pinholster,* 563 U.S. 170, 180–81 (2011).

could be admitted.  *Id.* at 336–37.  In any event, Perez was never called to testify.
As a result, no evidence regarding his prior abusive behavior towards Rodriguez,
Ortiz, or Perez was before the jury.  In addition, the jury did not hear the full
spectrum of potential evidence regarding his abusive behavior towards Adovasio.[15]
The Court therefore concludes that there was no evidence before the jury to suggest
that Coello was a "serial domestic abuser" with respect to women he had been in
relationships with and that Coello's allegation that "fallacious domestic violence
assertions infected the proceedings" is unsubstantiated.  Habeas Memorandum at 7,
23.

Coello argues that had Ortiz, Rodriguez, and Perez been asked about their
relationships with him, they all would have testified that Coello had never been
physically abusive towards them.  However, given the extent of evidence ruled
inadmissible as a result of the *Molineux* hearing, it was reasonable for Coello's
counsel not to pursue this line of testimony.  This type of testimony would have
presented a one-sided view of the relationships and, as recognized by his counsel,

---

[15] In particular, the court precluded the prosecution from presenting evidence about
Coello's August 2007 assault of Adovasio.  After the *Molineux* hearing and during
trial, limited testimony regarding the 2007 assault was allowed from one witness
(Joseph Adovasio), with appropriate limiting instructions to the jury regarding the
purpose of that evidence.  TR. at 137–47.  Another witness (Detective Fennell)
spoke about the assault in passing, given that Coello's written statement to the
police stated that "I haven't laid a hand on her since 2007."  *Id*. at 171.  The trial
court struck Detective Fennell's answer from the record and informed the jury that
the answer "may not be considered [ ] for any purpose in this trial."  *Id*. at 177.  The
court also excluded testimony from two of Adovasio's friends, Sara Steinberg and
Maryann Pagnotta, about injuries to Adovasio that they had observed and what
Adovasio had told them regarding the origins of these injuries.  MH. at 239–41.

likely would have "open[ed] the door to something else coming in," such as the admission of previous statements regarding abuse these individuals allegedly faced. TR. at 410; s*ee, e.g., Darden v. Wainwright*, 477 U.S. 168, 186 (1986) ("Any attempt to portray petitioner as a nonviolent man would have opened the door for the State to rebut with evidence of petitioner's prior convictions.  This evidence had not previously been admitted in evidence, and trial counsel reasonably could have viewed it as particularly damaging."); *see also Greiner v. Wells*, 417 F.3d 305, 324 (2d Cir. 2005) ("We cannot fault [trial counsel] for refusing to introduce evidence [raised by petitioner] in light of its 'significant potential downside' . . . that it would have opened the door to a prosecution line of inquiry harmful to the defense").

The decision of Coello's trial counsel not to call these witnesses to testify as to his character, if anything, constituted sound legal strategy.  As a result of this decision, the jury did not hear any evidence about his relationships with any woman besides Adovasio, and the most severe allegations of abuse that he committed against her were not presented to the jury.  Coello has thus failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness.

Even if Coello could demonstrate that counsel's performance was objectively unreasonable, Coello has failed to establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  It would have been counterproductive for counsel to introduce character evidence and call the witnesses suggested by Coello,

33

given their prior statements to the police regarding domestic abuse.  The state court therefore was not unreasonable in concluding that "[i]ntroducing character evidence would have undone all of [trial counsel's work in convincing the court to not allow evidence of prior documented domestic incidents to be admitted]" and that counsel's decision not to call these witnesses to testify "was rooted in a sound legal strategy." 440 Decision at 6.

Finally, Coello alleges that Justice Fabrizio erroneously asserted that Coello was a "serial abuser" during sentencing and that this viewpoint influenced the judge's decision to sentence him to the maximum sentence possible (25 years to life). Habeas Reply at 9–10.  Coello has not formally challenged the length of his sentence, meaning that Justice Fabrizio's comments in sentencing are not before the Court.  Furthermore, Justice Fabrizio was not referring to Coello being a "serial abuser" with respect to other women, such as Rodriguez, Ortiz, or Perez.  He stated that "[Coello was] a real serial abuser when it came to [Adovasio]." TS. at 25.  The record demonstrates that Coello and Adovasio had a "tumultuous" relationship and that previous incidents of physical abuse had occurred.  TR. at 8, 146–48, 372–73. Coello's counsel therefore cannot be found to have been ineffective for failing to object to this statement.

For these reasons, Coello has failed to establish that the state court unreasonably applied the *Strickland* standard when it rejected his claim that trial counsel was ineffective for failing to investigate the prosecution's assertion that he

was a serial domestic abuser and call witnesses that would testify to his non-abusive character.

> ### ii.   Whether Trial Counsel Failed to Investigate and Introduce Evidence to Demonstrate Lack of Intent

Coello alleges that he did not have the requisite intent to commit murder in the second degree and that his trial counsel failed to present evidence of his "lack of intent" to the jury. Habeas Memorandum at 13–14. He alleges that had this evidence been presented, the result of his trial would have been different. *Id.* at 13. In particular, Coello argues that counsel failed to present evidence that he "entered a state of panic upon realizing that his wife was unresponsive as a result of his actions," that he "then drove his wife to Montefiore Hospital." *Id.* Further, he argues that counsel failed to present evidence that upon arrival to the hospital, he "began to carefully remove his wife's body from the car, but he panicked to the point of no longer reasoning" and drove towards Yorktown, with the intention of asking Dr. Cushner to look after his stepchildren because he was going to turn himself into the police. *Id.*

He also contends that counsel failed to present evidence that he "surrender[ed] himself to the authorities before a crime was even known to the police." *Id.* He argues that counsel was ineffective for failing to present this evidence, and that this evidence would have resulted in a lesser charge of manslaughter in the second degree.

However, the security camera footage directly contradicted Coello's allegation that he attempted to take Adovasio to the hospital after realizing that she was

35

unresponsive.  TR. at 59–64, 89–91.[16]  Thus, any evidence of Coello's panic and

attempt to take Adovasio to the hospital after "realizing that she was unresponsive"

would have likely been met with cynicism from the jury, particularly given that

Coello's initial statement to the police was also contradicted by the security camera

footage.[17]

The record also demonstrates that the only discussion Coello had with the

police regarding a possible surrender occurred *after* Adovasio's body was discovered.

Although Coello spoke to the police on March 14, 2011 (prior to Adovasio's body

being discovered), the purpose of that conversation was to report Adovasio missing,

not to surrender.  *Id.* at 177.  Coello spent approximately 12 hours at the police

station on March 14, 2011, and throughout those 12 hours maintained his story that

Adovasio had walked out of the apartment after an argument on the evening of

March 11, 2011, and not returned.  *Id.* at 151, 154–55, 178.  Although Coello

attempted to surrender to the police on March 16, 2011, this was *after* Adovasio's

body had been discovered.  Accordingly, counsel can hardly be said to have failed in

---

[16] Coello left the apartment building at 9:48 p.m. on March 11, and subsequently re-entered the apartment.  At approximately 1:38 a.m. on March 12, he carried a large, weighted object to his car, presumably Adovasio's body.  He placed this object in the car, drove the car back to its original parking spot, and then went back inside the apartment for almost two hours.  He left the apartment and drove away in his car at 3:24 a.m.  Even if Coello attempted to take Adovasio to the hospital, he waited between two to six hours to do so (depending on when the incident occurred).  TR. at 59–64, 89–91.  This evidence does not support Coello's claim that he "entered a state of panic upon realizing that his wife was unresponsive . . . [and] then drove his wife to Montefiore Hospital."  Habeas Memorandum at 13.

[17] It is also unclear how Coello's trial counsel could have presented this evidence to the trial court without Coello testifying.

her representation of Coello for deciding against presenting evidence that was not supported by the record.  Regardless, any attempt to surrender to the police is of little relevance to whether Coello possessed the requisite intent at the time he killed Adovasio.

In addition, the Court notes that throughout trial, Coello's counsel's strategy was to demonstrate that Coello did not intentionally kill Adovasio.  Counsel presented two witnesses to support this position, cross-examined the prosecution's witnesses with this strategy in mind, and focused on the lack of intent to kill in her summation.  TR. at 630–31, 643–44, 646–48, 653–54.  Ultimately, his counsel successfully argued that there was a genuine jury question about intent, and as a result the court introduced the lesser charge of manslaughter in the first degree in the alternative.  *Id.* at 600–01, 621–22.

Even if Coello could have demonstrated that his trial counsel's failure to present the evidence at issue deprived him of his right to counsel, Coello was not prejudiced by this failure.  None of this evidence would have contradicted the security camera footage that recorded Coello's calm demeanor and the period of time that lapsed before Coello drove off with Adovasio's body in the car.  Nor would it have contradicted Dr. Gill's opinion that Adovasio's injuries were consistent with someone applying pressure to her neck for two to four minutes (evidence presented by the prosecution to demonstrate that in order to sustain pressure for that period of time, Coello must have had the intent to kill Adovasio).  Thus, Coello fails to

37

establish that the state court unreasonably applied the *Strickland* standard in relation to this claim.

### iii.        Whether Trial Counsel Failed to Adequately Discuss the Case with Coello

Coello contends that his trial counsel's performance was deficient because she failed to adequately discuss the case with him.  Coello states that his counsel "never met with the petitioner in person" and "rarely" returned his telephone calls and emails.  Habeas Memorandum at 16.  Coello provided no evidence to the state court to support these assertions and has provided no meaningful evidence to this Court to rebut the previous findings that counsel's "representation met, and in fact exceeded, constitutional standards."  *Id.* at 12.  Counsel discussed the case with him prior to his arrest (Dkt. No. 14-9, at 38), spoke to a potential witness, Ortiz (TP. at 3–4), and tried to negotiate a plea on Coello's behalf.  In the *Molineux* hearing, counsel demonstrated substantive knowledge of the allegations of abuse committed by Coello against Adovasio and his former romantic partners, which presumably came from conversations with the defendant himself.

On this basis, the state court's determination that Coello's trial counsel "conferred with [him] extensively throughout the trial" is not an unreasonable determination of the facts.  440 Decision at 12.  In any event, Coello has not shown that he suffered any prejudice due to counsel's alleged failure to adequately discuss the case with him.  His counsel had command of the facts and Coello's position. Thus, Coello fails to establish that the state court unreasonably applied the *Strickland* standard in relation to this claim.

iv.      **Whether Trial Counsel Failed to Present an**
         **Independent Medical Expert Witness**

Coello contends that his counsel failed to impeach the prosecution's medical

expert witness by failing to consult with and present an independent medical expert

witness.  Habeas Memorandum at 17.  He contends that the testimony given by the

two medical experts was contradictory and that a third and independent medical

expert would have confirmed that Adovasio's death was the result of a reckless

confrontation, not an intentional and planned act.  *Id.* at 17–18.

However, Coello's counsel called Dr. Milovanovic to testify as a defense

witness at trial and consulted with him prior to testifying.  Although Dr.

Milovanovic was not "independent" in the sense that he had no previous connection

with the case, he had no personal interest in the case and "[was] not hired by [the]

prosecution or defense."  TR. at 574.  Dr. Milovanovic performed the autopsy of

Adovasio as part of his duties as Deputy Medical Examiner for Westchester County.

*Id.* at 572, 574.  In many ways, his testimony was contrary to the evidence provided

by Dr. Gill and supported Coello's trial counsel's strategy to demonstrate that Coello

did not act with the intent to kill his wife.  For example, Dr. Milovanovic testified

that it was possible that Adovasio was alive for some period of time after her neck

was momentarily compressed, but then died at some point thereafter (*id.* at 584),

which contradicted Dr. Gill's evidence that in order to cause death, compression

must be maintained for two to four minutes.  *Id.* at 545–46.  He also testified that in

most cases of manual strangulation causing death, external abrasions, contusions,

and fingernail marks would generally be visible on the anterior part of the neck, but

that no such marks were found on Adovasio's neck. *Id.* at 577–78. Further, contrary to Dr. Gill's view, Dr. Milovanovic testified that the bruises on Adovasio's body could have occurred post-mortem, by accidentally striking her body against a car door. *Id.* at 582–83. Thus, despite not being an "independent" expert witness, Dr. Milovanovic's testimony was favorable to Coello.

Although Dr. Milovanovic's testimony was contrary to the prosecution's medical expert, there is no evidence that the result of the proceeding would have been different if a third medical expert witness had testified. Substantial testimony had already been provided by Dr. Milovanovic and Dr. Gill regarding the cause of Adovasio's death. It is unclear how the testimony of a third expert witness would have differed from the evidence already before the jury. Coello never presented an affidavit or declaration from a medical expert to support his assertion that the expert would have testified that Adovasio's death was the result of a reckless confrontation. Moreover, it would have been within the trial court's discretion to limit the number of witnesses to testify on a single issue. *See, e.g., Clemons v. Vanderpool,* 735 N.Y.S.2d 705, 707 (4th Dep't 2001) (court properly excluded expert testimony rebutting opinion of defendant's medical expert on ground that such testimony would be cumulative). A trial court "may refuse to allow cumulative, repetitive or irrelevant testimony." *Alcindor v. Schneiderman,* No. 15-CV-1892 (AJN) (JLC), 2017 WL 1383997, at *22 (S.D.N.Y. Apr. 14, 2017), *adopted by,* 2018 WL 583117 (S.D.N.Y. Jan. 25, 2018) *(*quoting *Geders v. United States*, 425 U.S. 80,

40

87 (1976)).  The trial court could have reasonably exercised its discretion to exclude evidence on cause of death from a third medical expert.

Further, even with a third expert, the jury would be required to evaluate all of the expert testimony, and it is not certain that the jury's decision regarding Coello's intent would have changed such that Coello would not have been convicted. Thus, Coello fails to establish that the state court unreasonably applied the *Strickland* standard in relation to this claim.[18]

### 3.    Ineffective Assistance of Appellate Counsel – Second Claim

Coello's second claim is that he was deprived of his constitutional right to effective assistance of appellate counsel on direct appeal, because appellate counsel

---

[18] As part of his ineffective assistance of trial counsel argument, Coello also contends (although it is not clear how it relates to the argument) that the state court's denial of his C.P.L. § 440.10 motion was based on factual errors.  Habeas Memorandum at 25–27.  He suggests that his conviction should be vacated on the basis of these factual errors.  However, a state court's "determination of a factual issue" is presumed correct, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Coello has not submitted any evidence to rebut the state court's factual findings, much less "clear and convincing evidence."  Furthermore, Coello has not demonstrated that but for these "factual errors," Coello's C.P.L. § 440.10 motion would have been granted.

Furthermore, in his reply, Coello contends for the first time that the prosecutor failed to disclose one of its witness' full criminal record in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. U.S.*, 405 U.S. 150 (1972).  Habeas Reply at 11.  "However, as a general rule, a court does not consider arguments raised for the first time in a reply brief."  *Holguin v. Lee*, No. 13-CV-1492 (LGS) (JLC), 2014 WL 5508331, at *4, n.4 (S.D.N.Y. Oct. 31, 2014), *adopted by,* No. 13-CV-1492 (LGS), 2016 WL 1030129 (S.D.N.Y. Mar. 10, 2016).  Such a rule is meant to "deter[ ] the practice of raising new arguments on reply that the opposing party is unable to respond to."  *Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, 324 F. Supp. 3d 387, 395 (S.D.N.Y. 2018).  Therefore, the Court deems Coello's *Brady* and *Giglio* claims to be waived.

failed to advance five meritorious issues: (1) the evidence adduced at trial was insufficient to establish that Coello possessed the requisite intent to murder his wife (Habeas Memorandum at 28–34); (2) the trial court erroneously denied several mistrial applications made by the defense (*id.* at 34–44); (3) his trial counsel was ineffective because she failed to object to prejudicial testimony of Coello's stepson (*id.* at 44–48); (4) remarks made by the prosecutor during summation deprived him of a fair trial (*id.* at 48–55); and (5) the trial court failed to provide a meaningful response to the jury's first note (*id.* at 55–57).

Coello's "ineffective assistance of appellate counsel" claim is deemed exhausted and not procedurally barred, but without merit.

### a.     Coello's Ineffective Assistance of Appellate Counsel Claim is Deemed Exhausted and Not Procedurally Barred

The ineffective assistance of appellate counsel claim is exhausted and not procedurally barred because Coello presented it at every relevant level in state court and the claim was denied on its merits rather than because of a state procedural rule.   Coello raised his ineffective assistance of appellate counsel claim in both his *Coram Nobis* Petition and in his leave application to the Court of Appeals.  The Appellate Division denied Coello's *Coram Nobis* Petition in a summary decision.  *People v. Coello,* 2016 Slip Op. 88142(U), 2016 WL 5939079 (1st Dep't 2016); Dkt. No. 4-1, at 22–23.  The Appellate Division's summary denial constitutes an adjudication "on the merits" for purposes of 28 U.S.C. § 2254. *Johnson v. Williams*, 568 U.S. 289, 301 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must

presume that the federal claim was adjudicated on the merits."). Coello's claim of ineffective assistance of appellate counsel is thus exhausted, and it is not subject to any state procedural bars (nor does respondent contend otherwise). Therefore, the merits of the ineffective assistance of appellate counsel claim should be analyzed under the AEDPA standard of review.

### b.   Coello's Ineffective Assistance of Appellate Counsel Claim Lacks Merit

As with a claim of ineffective assistance of trial counsel, a claim of ineffective assistance of appellate counsel is evaluated under the standard set forth in *Strickland,* 466 U.S. 668 (1984). To succeed Coello must "(1) show that his counsel's representation 'fell below an objective standard of reasonableness' and (2) 'affirmatively prove prejudice.'" *Rosa,* 666 F. App'x. at 44 (quoting *Strickland,* 466 U.S. at 687–88).

The Appellate Division rejected Coello's claim that he was deprived of the right to effective assistance of appellate counsel. Although the Appellate Division denied Coello's claim in a summary decision, Coello has not demonstrated to this Court that his appellate counsel's performance fell below any objective standard of reasonableness, or that he was prejudiced as a result of any deficiency in representation. A review of the record indicates that the Appellate Division's denial of Coello's Coram Nobis Petition was not contrary to, or an unreasonable application of, the *Strickland* standard. Appellate counsel "need not (and should not) raise every nonfrivolous [or colorable] claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*,

43

528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745, 751–54 (1983)).  "A brief that raises every colorable issue runs the risk of burying good arguments – those that . . . go for the jugular."  *Jones*, 463 U.S. at 753 (citations omitted). However, counsel's performance may be constitutionally inadequate if a defendant shows that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  A reviewing court should not second guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues, and thus "may not use hindsight to second-guess [counsel's] strategy choices."  *Id*.

The record demonstrates that Coello's appellate counsel advanced a reasonable and promising argument on appeal and exercised reasonable judgment when doing so.  The Court finds that the decision not to advance the five arguments now raised by Coello was not unreasonable, and Coello has presented no evidence to demonstrate that any of these claims were any stronger than the claim advanced by his appellate counsel, namely that the trial judge erred in denying the defense's request to charge the jury on the affirmative defense of extreme emotional disturbance.  Thus, the Court concludes that Coello's claims in relation to his appellate counsel's assistance are meritless, and recommends that they be denied.

###     i.     Whether Evidence Adduced at Trial Was Insufficient to Establish Requisite Intent

Coello contends that his appellate counsel was ineffective for failing to argue on appeal that the evidence was insufficient to prove that he intentionally killed Adovasio.  Habeas Memorandum at 28.

44

A verdict will be legally sufficient if there is "any valid line of reasoning and permissible inferences that could lead a rational person to conclude that every element of the charged crime has been proven beyond a reasonable doubt." *People v. Lamont*, 25 N.Y.3d 315, 318 (2015) (quoting *People v. Delamota*, 18 N.Y.3d 107, 113 (2011)) (internal citations omitted). Coello must therefore prove that "'viewing the evidence in the light most favorable to the government . . . no [rational] trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt.'" *Knapp v. Leonardo*, 46 F.3d 170, 178 (2d Cir. 1995) (quoting *United States v. Jones*, 16 F.3d 487, 490 (2d Cir. 1994)).

Coello argues that "there was sufficient evidence in the record to overturn his conviction based on the absence of intent" and that "in its entirety [ ] the evidence does not support the People's theory that [he] intended to kill his wife or that his intentions following the tragedy were calculated to cover up his actions." Habeas Memorandum at 31–32. However, the prosecution's evidence was clearly sufficient to convict Coello of murder in the second degree. For example, according to Dr. Gill's testimony, it takes between two to four minutes of sustained pressure to a person's neck to cause death by strangulation, suggesting that Coello maintained pressure to Adovasio's neck for an extended time (long enough to demonstrate an intent to kill). TR. at 545–46. Furthermore, the security camera footage of Coello moving his car several times in a calm and collected manner and his statements to Joseph attempting to establish an alibi, exhibited a level of calculation and planning after Adovasio's death. 440 Decision at 9; TR. at 45, 48–49, 59–64, 89–91,

45

569.  On this record, a reasonable jury could have concluded that the prosecution

had met its burden.  Thus, any claim challenging the sufficiency of the intent

evidence on appeal would not have succeeded.

Appellate counsel's decision not to raise an argument regarding sufficiency of

evidence was not objectively unreasonable.  Evidence was available to the jury to

support a finding of intent.  Further, Coello suffered no prejudice from counsel's

failure to raise this claim.  There is no reasonable probability that but for counsel's

failure to raise the issue, Coello would have prevailed.

### ii.     Whether the Trial Court Erroneously Denied Several Mistrial Applications

Coello contends that appellate counsel was ineffective for failing to appeal the

trial court's denial of several mistrial applications made by his trial counsel.  The

mistrial applications made by Coello's trial counsel were based on: (1) the

prosecution acting as an unsworn witness during Joseph's testimony (*see* TR. at 66);

(2) the prosecution questioning Joseph regarding prior domestic abuse incidents

despite a *Molineux* ruling excluding this information (*id.* at 129); (3) the prosecution

"put[ting] words in [Coello's] mouth and again violat[ing] the *Molineux* ruling in

questioning a police detective and fail[ing] to give notice to the defense regarding

this testimony" (*id.* at 169); and (4) the prosecution failing to disclose information to

the defense regarding the criminal record of a witness, Meli (*id.* at 492).  Habeas

Memorandum at 34–44.

In every instance cited by Coello, the trial court took curative steps to

mitigate against any prejudice that may have arisen.  In relation to the allegation of

the prosecution improperly testifying, the jury was instructed that evidence consists of a question coupled with an answer, and that if the objection is sustained, the jury is to disregard the question. TR. at 88. As to the prosecution questioning Joseph regarding alleged domestic abuse incidents, no mistrial application was made by Coello's trial counsel for appellate counsel to appeal. Further, the trial court admitted this evidence based "on the fact that the door ha[d] been opened" by counsel's cross-examination "painting a picture of a relationship that appear[ed] . . . to be somewhat one sided." *Id.* at 139–40. A curative instruction to the jury was also given. *Id.* at 147–48. In relation to Detective Fennell's testimony concerning a domestic abuse incident in 2007, the court struck the contested testimony, instructed the jury to disregard it, and precluded the prosecution from asking the detective anything further about the 2007 incident. *Id.* at 175–77. Additionally, information about Meli's criminal convictions came to light during cross-examination and Coello's counsel was able to elicit the details of his convictions directly from Meli. *Id.* at 499–502.

Whether to grant a mistrial lies within the discretion of the trial court. *Arizona v. Washington*, 434 U.S. 497, 510–11 (1978). Further, juries are presumed to "follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant." *Greer v. Miller*, 483 U.S. 756, 767, n.8 (1987). There is no indication that the jury was unable to follow the trial court's

47

instructions, and the evidence at issue was not in and of itself harmful to Coello, in light of the record developed by the trial judge.  Thus, the determination to deny Coello's applications for a mistrial did not constitute an abuse of discretion, and Coello was not prejudiced by appellate counsel's decision not to challenge it.

### iii.      Whether Trial Counsel Was Ineffective by Allowing Prejudicial Testimony

Coello contends that trial counsel was ineffective for failing to object to Joseph's testimony regarding the video camera footage and that his appellate counsel was ineffective for failing to raise this argument on appeal.  Habeas Memorandum at 45.  In particular, Coello claims that Joseph's testimony that "[i]t is Eddy walking out with my mom" when presented with video evidence of Coello walking out of their home with a large bag was prejudicial to his case and trial counsel unreasonably failed to object to this testimony.  *Id.* (*quoting* TR. at 63–64).

Coello has not demonstrated that he suffered prejudice from this comment and trial counsel's failure to object.  The theory of the case that his trial counsel advanced was not that he did not kill Adovasio, nor was it that he did not place Adovasio's body in the car.  Rather, the theory advanced at trial was that the killing of Adovasio was not intentional.  *See* TR. at 631 (trial counsel arguing during summation that prosecution had failed to prove beyond a reasonable doubt that Coello had intended to kill Adovasio).  Further, evidence was available to the jury to support the conclusion that Coello was "walking out with [Adovasio's]" body and placed her body in the car.  Thus, it was not objectively unreasonable for Coello's appellate counsel to decide against raising this claim and to appeal Coello's

48

conviction on a potentially more meritorious ground.  Furthermore, Coello has not demonstrated that but for this statement by Joseph, he would not have been convicted.

### iv.      Whether the Prosecutor's Remarks Deprived Coello of a Fair Trial

Coello contends that appellate counsel was ineffective because she did not argue that the prosecutor engaged in misconduct during the trial and that this misconduct denied Coello his right to a fair trial.  Habeas Memorandum at 48. Coello claims that the prosecutor asked Joseph highly prejudicial questions and improperly testified as a witness by repeating parts of Joseph's "baseless" testimony.  *Id.* at 48.  He argues that, in several instances, prosecution witnesses "blurted out" statements that were previously precluded, and these statements significantly prejudiced him.  *Id.* at 50.  Finally, he contends that the prosecutor's summation deprived him of a fair trial by arguing facts not in evidence, expressing a personal belief in Coello's guilt, "mischaracteriz[ing] and denigrat[ing] the defense," and appealing to the juror's emotions.  *Id.* at 52.   He contends that these were "significant instances of prosecutorial misconduct" and that appellate counsel was ineffective for not challenging the propriety of the prosecutor's actions.

As noted above, mistrial applications were made in relation to the testimony of witnesses when they "blurted out" statements containing evidence excluded through the *Molineux* hearing.  The trial court took curative steps to mitigate against any prejudice that may have arisen.  *See* TR. at 383–84, 443–45.  No

prejudice was therefore suffered by Coello and appellate counsel's decision not to raise this issue on appeal was not objectively unreasonable.

In addition, it was not unreasonable for appellate counsel to decide against raising a claim regarding the prosecutor's summation.  Trial counsel did not seek a mistrial after the conclusion of the prosecution's summation on the ground that it deprived Coello of a fair trial.  Under New York law, "points which were not raised at trial may not be considered for the first time on appeal."  *Olivo v. Thorton*, No. 05-CV-3237 (PKC) (AJP), 2005 WL 3292542, at *9 (S.D.N.Y. Dec. 6, 2005) (citing *People v. Thomas*, 50 N.Y.2d 467, 471 (1980); C.P.L. § 470.05(2)).  Thus, this argument was unpreserved for appellate review.

## v.   Whether the Trial Court Failed to Provide a Meaningful Response to the Jury's First Note

Coello contends that his appellate counsel should have argued that the trial court failed to provide a meaningful response to the first note sent by the jury. Habeas Memorandum at 55–57.  The note asked for, among other things, a "read back of [the] 'intent' part of [the] charge and [the] DA's 'minute' of intent evidence." Dkt. No. 4-1, at 59.  Coello alleges that the trial court improperly paraphrased to counsel the contents of the note relating to the "DA's 'minute' of intent evidence," and that this was an error requiring reversal.  Habeas Memorandum at 56. Additionally, Coello contends that instead of providing the jury with a read back of the "DA's 'minute' of intent evidence," the trial court provided the jury with a "detailed explanation of the definition of evidence" which did not constitute a "meaningful response," as required by law.  *Id.*

50

Meaningful notice is best served by reading a jury note to counsel verbatim. *People v. O'Rama*, 78 N.Y. 2d 270, 277–78 (1991) ("in most cases, [ ] whenever a substantive written jury communication is received by the Judge, it should be marked as a court exhibit and, before the jury is recalled to the courtroom, read into the record in the presence of counsel [to] ensure a clear and complete record.") However, it is not mandatory to show jury notes to counsel or read their contents verbatim in all circumstances. See, e.g., *Jones v. Smith*, No. 09-CV-6497 (PAE) (GAY), 2012 WL 1592190, at *7 (S.D.N.Y. May 7, 2012) (even though "disclosure of the note's precise language is necessary to ensure proper notice in 'most cases,'" because no suggestion that petitioner's rights were jeopardized by trial court's failure to read note verbatim, it was not unreasonable to reject ineffectiveness of counsel claim).

Here, the record demonstrates that the trial court did not read the entirety of the jury note verbatim to counsel. However, the court read each individual component of the note to counsel, and did not improperly paraphrase. In regard to the component of the note relating to the "DA's 'minute' of intent evidence," the court read that component of the note verbatim and clarified the punctuation of that particular request. TR. at 703–04. The trial court then engaged with the prosecution and defense regarding how best to interpret the content of the request, and drafted language to present to the jury, which both parties approved. *Id.* at 704–07. The trial court gave the parties meaningful notice, and appellate counsel was therefore not unreasonable for declining to raise this issue on appeal.

51

Furthermore, the trial court's response to the jury's note was appropriate under the circumstances. The court considered, and Coello's trial counsel agreed, that the jury intended to request part of the prosecution's summation when the prosecutor asked the jury to "take a minute and during that minute, [ ] think about his hands on her neck, maintaining continuous pressure starting now." *Id.* at 669–70. At the end of the minute the prosecutor told the jury: "[t]hat's half the time that Doctor Gill says is necessary." *Id.* In response to this note, the trial court explained to the jury that a summation is not evidence, and that "[e]vidence is testimony, it is exhibits, and it is the stipulations." *Id.* at 711. This was a reasonable response to the jury note. Furthermore, no prejudice was suffered by Coello. Had the jury intended to ask for a different clarification, it could have done so after receiving the trial court's response. Therefore, appellate counsel's decision not to raise this issue on appeal was not unreasonable.

### 4.    Due Process Violation for Failure to Submit the Defense of Extreme Emotional Disturbance – Third Claim

Coello's third claim is that he was deprived of his constitutional right to due process because the trial court refused to submit the affirmative defense of extreme emotional disturbance, "violat[ing] [his] constitutional rights to present a complete defense as guaranteed by the 6th and 14th Amendments of the U.S. Constitution." Habeas Memorandum at 58. Coello's third claim is deemed exhausted and not procedurally barred, but is not a cognizable habeas claim and is meritless.

### a.   Coello's Extreme Emotional Disturbance Claim is Deemed Exhausted and Not Procedurally Barred

Coello's extreme emotional disturbance claim is exhausted and not procedurally barred because Coello presented it at every relevant level in state court and the claim was denied on its merits rather than because of a state procedural rule.  Coello's appellate counsel challenged the trial court's refusal to submit the affirmative defense of extreme emotional disturbance in the direct appeal to the Appellate Division.  Dkt. No. 14-1, 14-2.  Appellate counsel then raised this issue in her subsequently denied application for leave to the Court of Appeals.  Dkt. No. 14-5.  Coello's claim that the trial court erred in refusing to submit the affirmative defense of extreme emotional disturbance to the jury is thus exhausted and is not subject to any state procedural bars (nor does respondent contend otherwise).

### b.   Coello's Extreme Emotional Disturbance Claim Is Not Cognizable

"A jury charge in a state trial is normally a matter of state law and is not reviewable on federal habeas corpus absent a showing that the alleged errors were so serious as to deprive [the] defendant of a federal constitutional right."  *U.S. ex rel. Smith v. Montanye,* 505 F.2d 1355, 1359 (2d Cir. 1974) (citing *Cupp v. Naughten*, 414 U.S. 141 (1973)).  A challenged jury charge must have "so infected the entire trial that the resulting conviction violates due process."  *Estelle v. McGuire*, 502 U.S. 62, 71 (1991) (citations omitted); *see also Davis v. Strack*, 270 F.3d 111, 123, n.4, 131–32 (2d Cir. 2001) (trial court's failure to charge justification

was error of state law that deprived defendant of highly credible defense and was

due process violation that infected entire trial).  Coello has not established that the

trial court erred in refusing to submit the affirmative defense of extreme emotional

disturbance to the jury, much less an error "so severe that it deprived him of a

fundamentally fair trial." *Reed v. Smith*, No. 08-CV-9311 (NSR) (LMS), 2014 WL

547024, at *17 (S.D.N.Y. Feb. 7, 2014); *see also Jackson v. Edwards*, 404 F.3d 612,

621 (2d Cir. 2005).

   "This Circuit has adopted a three-step test to determine whether a trial

court's failure to give an instruction on a particular defense rises to the level of a

federal constitutional violation for which habeas relief is available." *Reed,* 2014 WL

547024, at *16 (citing *Davis*, 270 F.3d at 124).  The first step is to determine

whether the charge was required as a matter of New York state law.  *Id.*  For the

following reasons, Coello has not satisfied this threshold question.

   Because extreme emotional disturbance is an affirmative defense (N.Y. Penal

§§ 125.25(1)(a); 125.20(2)), in order to be entitled to a jury charge on this defense,

Coello needed to first establish, by a preponderance of the evidence, that "he did in

fact act under extreme emotional disturbance, that the claimed explanation as to

the cause of his action is not contrived or sham." *People v. Casassa*, 49 N.Y.2d 668,

678–79 (1980).  "This defense consists of a subjective and an objective component.

First, the defendant must prove that the defendant acted under the influence of an

extreme emotional disturbance.  Second, the defendant must prove that there was a

reasonable explanation or excuse for the disturbance." *Bonilla v. Lee*, 35 F. Supp. 3d 551, 567 (S.D.N.Y. 2014).

Coello has not satisfied the subjective component of the defense. There was no reasonable view of the evidence that Coello acted out of "extreme emotional trauma" or "extremely unusual and overwhelming stress" such that he lost control on March 11, 2011. *People v. Irazarry*, 199 A.D.2d 180, 181 (1st Dep't 1993). The day she was killed, Adovasio sent a number of text messages to Coello earlier that evening, but Coello's response to Adovasio and his demeanor after receiving the messages did not demonstrate any extreme disturbance. For example, according to Woodley, Coello "wasn't angry" and appeared "normal" when he showed these messages to her. TR. at 569. Further, the trial court determined that, "when you look at the evidence as a whole, even view[ed] in the light most favorable to [Coello], he appear[ed] calm, cool, collected and composed throughout the next seven or eight hours" following Adovasio's death. *Id.* at 622–23. In the hours after her murder, Coello took multiple steps to hide her death. *See, e.g., Bonilla,* 35 F. Supp. 3d at 568 ("attempts to avoid apprehension 'reveal [an] enduring regard for self-preservation' that undermines any claim that the petitioner lost self-control") (quoting *Wilson v. Phillips*, No. 05-CV-1208 (ENV), 2010 WL 545862, at *8 (E.D.N.Y. Feb. 16, 2010)); *see also Zamora v. Phillips*, No. 04-CV-4093 (JFB), 2006 WL 2265079, at *6 (E.D.N.Y. Aug. 8, 2006) ("petitioner claimed to be frightened," but actions after shooting inconsistent with loss of self-control). Even if Coello was acting out of jealousy, anger, or embarrassment, these emotions are insufficient as

55

they are "not equivalent to the loss of self-control." *People v. Walker*, 64 N.Y.2d 741, 743 (1984).  Coello has not demonstrated that he acted under the influence of an extreme emotional disturbance.

In addition, in order to establish the objective element of the defense, "a defendant's reaction must be 'an understandable human response deserving of mercy.'" *Bien v. Smith*, 546 F. Supp. 2d 26, 48 (E.D.N.Y. 2008) (quoting *Shiwlochan v. Portuondo,* 345 F.Supp.2d 242, 266 (E.D.N.Y. 2004)).  There was no evidence before the trial court that Coello had an objectively reasonable excuse for any extreme emotional disturbance.  Nor was there any other credible evidence in the record to provide a reasonable explanation for Coello's alleged disturbance.  *See, e.g., id.* (citing *People v. Roche*, 98 N.Y.2d 70, 74 (2002)) (no objective reason for murder of wife "where [defendant and wife] had been arguing most of the day and she sent him on a number of errands on the afternoon of the murder, causing him to climb the stairs to the fifth-floor apartment numerous times.").

It was therefore reasonable for the trial court to find that Coello had not established under state law a total loss of self-control associated with extreme emotional disturbance.  Because Coello was not entitled to the jury instruction under state law, Coello's due process rights were not violated by the trial court's decision not to submit it and his claim is thus not cognizable.

### III.   CONCLUSION

For the foregoing reasons, the Court recommends that Coello's petition for a writ of habeas corpus be denied.

## PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections (plus three days because the Report is being mailed to Petitioner).  *See* Fed. R. Civ. P. 6(a), (b), (d).  A party may respond to any objections within fourteen (14) days after being served.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Vernon S. Broderick and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Broderick.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).  If Coello does not have access to cases cited herein that are reported on LexisNexis or Westlaw, he should request copies from counsel for the Respondent.  *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009); Local Civil Rule 7.2, Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: May 14, 2019
     New York, New York

JAMES L. COTT
United States Magistrate Judge

**A copy of this Report and Recommendation has been mailed to the following:**

Eddy Coello
DIN No. 12-A-5300
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929-2001